# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MOLLY L. PALMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  CIV-11-320-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Molly L. Palmer requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on October 18, 1964, and was forty-six years old at the time of the final administrative hearing. She earned her high school diploma and completed two semesters of college (Tr. 79-80). The claimant has past relevant work as a brazer and waitress (Tr. 25, 36). The claimant alleges that she has been unable to work since October 18, 2004, because of back and left shoulder problems and severe depression (Tr. 297).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 18, 2005. The Commissioner denied her applications. ALJ John Belcher initially determined that the claimant was not disabled in a written opinion dated June 30, 2009. The Appeals Council, however, remanded that opinion with instructions to further consider the non-treating opinion of Dr. Kenneth W. Foster, M.D. and evaluate the claimant's subjective complaints in accordance with relevant regulations and rulings. ALJ Belcher then held a second administrative hearing and determined that the claimant was not disabled in a written opinion dated July 9, 2010. The Appeals Council denied review of ALJ Belcher's

second opinion, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981; 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk or sit for six hours in an eight-hour work day, and that claimant should avoid performing a power grip or torqueing and twisting with her hands (Tr. 12). Due to mental limitations, the ALJ also found that the claimant could perform only simple tasks in a habituated work setting with only superficial contact with co-workers, supervisors, and the general public (Tr. 13). While the ALJ found that the claimant was unable to perform her past relevant work, he nonetheless found that she was not disabled because there was other work the claimant could perform in the national economy. The ALJ failed to identify any of those occupations (Tr. 22).

## Review

The claimant contends that the ALJ erred: (i) by failing to perform a proper step five determination; (ii) by failing to properly analyze the medical evidence of record; and (iii) by failing to properly analyze the claimant's credibility. The undersigned Magistrate Judge agrees that the ALJ failed to properly analyze the medical evidence of record.

The claimant was evaluated by state examining physician Dr. Jennifer Cameron, M.D. on April 22, 2006 (Tr. 519-24). Dr. Cameron found that claimant had mildly

reduced range of motion as it pertained to back extension, back flexion, and neck extension (Tr. 521). The claimant had a positive straight leg raise test while lying down, and had mid-thoracic and lumbar tenderness with cervical muscle spasms (Tr. 523).

State reviewing physician Dr. Thurma Fiegel, M.D. completed a Physical Residual Functional Capacity Assessment and found that claimant was capable of occasionally lifting/carrying up to 20 pounds, frequently lifting/carrying up to ten pounds, standing/walking for six hours in an eight hour workday, and sitting for six hours in an eight hour workday (Tr. 550). Dr. Fiegel also found that claimant was limited in her ability to reach in all directions and handle (gross manipulation) (Tr. 552).

With regard to mental impairments, the claimant was examined by state physician Dr. Theresa Horton, Ph.D. on July 5, 2006 (Tr. 526-30). During that examination, the claimant related that she has difficulty with being around other people, "falls apart easily and gets her feelings hurt easily" and "is so depressed she cannot stand the thought of getting out of bed" (Tr. 526). The claimant stated that she had been raped twice in the past, and that has contributed to her uneasiness around others (Tr. 527). The claimant told Dr. Horton that she was not receiving mental health treatment because she had no health insurance (Tr. 527). The claimant reported that she is not always motivated to maintain personal hygiene, enjoys no hobbies, sleeps all the time, and attends no groups, clubs, or churches (Tr. 527). She related that she lost custody of her daughter, and has a strained relationship with her parents (Tr. 528). The mental status examination revealed that claimant was tearful throughout the interview and hears voices (but did not want to

discuss it) (Tr. 529). Dr. Horton's diagnoses included Major Depressive Disorder, Recurrent, Severe, with psychotic features and Dysthymia (Tr. 529).

State reviewing physician Dr. Janice B. Smith, Ph.D., completed a Psychiatric Review Technique (PRT) on July 11, 2006. Dr. Smith found that claimant suffered from affective disorders characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome and was evidenced by anhedonia, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking and hallucinations, delusions, or paranoid thinking (Tr. 534). Based on these findings, Dr. Smith concluded that claimant had moderate limitations in restriction of activities of daily living, difficulties in maintaining social functions, and difficulties in maintaining concentration, persistence, or pace (Tr. 541). Dr. Smith also completed a Mental Residual Functional Capacity Assessment and found that claimant was markedly limited in her ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public (Tr. 545-46). Further, Dr. Smith found that claimant was moderately limited in her ability to maintain attention and concentration for extended periods (Tr. 545).

The claimant submitted to a Psychiatric Evaluation performed by Dr. Kenneth W. Foster, M.D. on February 28, 2007 (Tr. 561-62). Dr. Foster assigned a GAF score of 37, and noted that she was seriously mentally ill (Tr. 562). On May 21, 2007, Dr. Foster completed a form entitled "Residual Functional Capacity Secondary to Mental Impairments Including Pain, Fatigue, and Hysterical Paralysis "(Tr. 563-64). Dr. Foster

opined that claimant was extremely limited in the following occupational categories: i) follow work rules; ii) complete a normal workday or week without interruptions from psychologically-based or pain-related symptoms; iii) interact with supervisors; iv) deal with work stress; v) understand, remember, and carry out detailed or complex instructions; vi) maintain regular attendance and be punctual within customary tolerances; vii) accept instructions and respond appropriately to criticism from supervisors. Dr. Foster also concluded that she was severely limited in several categories, including, *inter alia*, the ability to relate to coworkers, understand, remember, and carry out simple instructions, and sustain an ordinary routine without special supervision (Tr. 564). Finally, Dr. Foster found that claimant was markedly limited in a number of categories (Tr. 563-64). In his written comments, Dr. Foster stated that he was basing his opinion on a psychiatric evaluation.

Finally, the claimant was evaluated by state examining physician Dr. John W. Hickman, Ph.D. on June 5, 2008 (Tr. 566-78). During the Mental Status Exam, Dr. Hickman noted that while her thought processes were relevant, coherent, and goal-directed, she "presented in a mildly manic state and her affect was not always consistent with the content of her speech" (Tr. 568). The claimant's results on the MMPI-2 revealed that she likely has a thought disorder with paranoid feature which may be accompanied by systemized delusions (Tr. 571). The profile that the claimant exhibited on the MMPI-2 includes the following characteristics: she may express significant personal stress through complaints of tension, worry and depression, she is probably

socially isolated and withdrawn, she may frequently exhibit unpredictable and socially inappropriate behavior, she would likely have difficulties in concentration and attention, memory deficits, and poor judgment, and may be severely and chronically maladjusted if not psychotic (Tr. 571). Dr. Hickman diagnosed claimant with, *inter alia*, bipolar disorder, mixed type, with psychotic features by history, anxiety disorder with panic attacks, and sleep disorder, assigned a GAF score of 55 to the claimant, and wrote that she has marked mood control difficulties and paranoid thinking with normal cognitive functioning (Tr. 572). Dr. Hickman's prognosis was that he did not expect much change in claimant's functioning in the near future, and her long-term prognosis was "guarded unless she adheres to her psychiatric medications and avoids stressful situations" (Tr. 572). He further stated that the claimant "has been experiencing increased paranoid thinking and difficulty with mood control" and thought it likely that she had "some degree of schizophrenia" and a mood disorder (that he thought could be substance induced) (Tr. 572). Dr. Hickman then completed a Mental Medical Source Statement in which he found that claimant was moderately limited in her ability to work in coordination with or proximity to others without being distracted by them, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes (Tr. 574-75).

The claimant contends that the ALJ failed to properly analyze the medical evidence of record and points to the ALJ's evaluation of Dr. Foster's opinion. The undersigned agrees that the ALJ's analysis of Dr. Foster's opinion is lacking. First, the ALJ discounted Dr. Foster's opinion based on a speculative conclusion that Dr. Foster had relied "quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported" (Tr. 21). But the ALJ must not rely on speculative inference when choosing to reject a physician's opinion. *See, Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [quotations omitted] [emphasis in original]. Further, Dr. Foster performed a psychiatric evaluation on claimant in February 2007, which demonstrated that she had a GAF of 37 at the time and diagnosed her with schizoaffective disorder and bipolar disorder and in no way suggests

that this was simply in reliance on claimant's allegations (Tr. 565). The ALJ also posits that Dr. Foster's opinions "are not even remotely corroborated by the remainder of the evidence of record" but fails to acknowledge that at least *some* of Dr. Foster's opinions correspond with the opinions of the state consultative examiners. For instance, while Dr. Foster found that the claimant was extremely limited in her ability to complete a normal workday or week without interruptions from psychologically-based or pain-related symptoms, Dr. Hickman found that the claimant was moderately limited in the same functional category.

The ALJ, however, appears to have discounted both consultative examiners' opinions, because he attributed each notation suggestive of increased mental impairment to the claimant's drug and alcohol abuse (Tr. 17). In doing so, the ALJ mischaracterized at least *some* of the evidence. For instance, the ALJ wrote that Dr. Hickman opined that the claimant had some degree of schizophrenia but that Dr. Hickman stated that it was substance-induced (Tr. 21). However, Dr. Hickman's evaluation suggested that the claimant's *mood disorder* was substance-induced, not the claimant's probable schizophrenia (Tr. 572). Moreover, Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the

that this was simply in reliance on claimant's allegations (Tr. 565). The ALJ also posits that Dr. Foster's opinions "are not even remotely corroborated by the remainder of the evidence of record" but fails to acknowledge that at least *some* of Dr. Foster's opinions correspond with the opinions of the state consultative examiners. For instance, while Dr. Foster found that the claimant was extremely limited in her ability to complete a normal workday or week without interruptions from psychologically-based or pain-related symptoms, Dr. Hickman found that the claimant was moderately limited in the same functional category.

The ALJ, however, appears to have discounted both consultative examiners' opinions, because he attributed each notation suggestive of increased mental impairment to the claimant's drug and alcohol abuse (Tr. 17). In doing so, the ALJ mischaracterized at least *some* of the evidence. For instance, the ALJ wrote that Dr. Hickman opined that the claimant had some degree of schizophrenia but that Dr. Hickman stated that it was substance-induced (Tr. 21). However, Dr. Hickman's evaluation suggested that the claimant's *mood disorder* was substance-induced, not the claimant's probable schizophrenia (Tr. 572). Moreover, Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the

that this was simply in reliance on claimant's allegations (Tr. 565). The ALJ also posits that Dr. Foster's opinions "are not even remotely corroborated by the remainder of the evidence of record" but fails to acknowledge that at least *some* of Dr. Foster's opinions correspond with the opinions of the state consultative examiners. For instance, while Dr. Foster found that the claimant was extremely limited in her ability to complete a normal workday or week without interruptions from psychologically-based or pain-related symptoms, Dr. Hickman found that the claimant was moderately limited in the same functional category.

The ALJ, however, appears to have discounted both consultative examiners' opinions, because he attributed each notation suggestive of increased mental impairment to the claimant's drug and alcohol abuse (Tr. 17). In doing so, the ALJ mischaracterized at least *some* of the evidence. For instance, the ALJ wrote that Dr. Hickman opined that the claimant had some degree of schizophrenia but that Dr. Hickman stated that it was substance-induced (Tr. 21). However, Dr. Hickman's evaluation suggested that the claimant's *mood disorder* was substance-induced, not the claimant's probable schizophrenia (Tr. 572). Moreover, Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the

opinion in his decision. *Id. See also Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). The ALJ failed to explain the weight he was assigning to *either* opinion. Considering Dr. Hickman's findings regarding claimant's prognosis *and* that she was moderately limited in her ability to, *inter alia*, complete a normal workday and workweek without interruptions from psychologically based symptoms, the undersigned cannot conclude that it was harmless for the ALJ to forego his duty to properly analyze the consultative examiners' opinions. *See, Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995).

Finally, the ALJ seems to have adopted the findings of reviewing physician Dr. Smith but failed to both analyze the opinion in accordance with relevant regulations and Soc. Sec. R. 96-6p *and* explain why he adopted Dr. Smith's opinion over the opinions of the state consultative examiners and Dr. Foster. *See, Miranda v. Barnhart*, 205 Fed. Appx. 638, 641 (10th Cir. 2005) (noting that the ALJ did not adequately explain why the opinion of a non-examining physician deserved greater weight than the opinion of an

examining physician) [unpublished opinion]. Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *2. "If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it." *Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). The ALJ failed to even *mention* Dr. Smith's opinion in his decision.

Because the ALJ failed to properly analyze the medical evidence of record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of March, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma